By the WHOLE COURT.
ROGERS, J.
Relator appeals from a judgment denying an application for mandamus to compel its restoration to membership in the respondent corporation.
Relator alleges that it possesses all necessary qualifications for membership in the respondent corporation; that it was, in fact, duly elected to membership therein, and during the term thereof it violated no provision of the charter or by-laws of. said corporation; that the ground up'on which it was expelled from its membership, namely, that its stockholders were “not solely engaged in the active solicitation of fire insurance from the public as a means of their livelihood,” is not supported by any charter provision or by-law, and that there are now, and always have been, many corporations and firms members of respondent corporation, the stockholders whereof, to the extent of many hundreds of individuals, are not exclusively engaged in the insurance business as a means of livelihood, and that no action was ever taken against said corporations and firms because of said fact, for the purpose of expelling them from membership, nor is there any action to this end in contemplation.
Relator further alleges that, if the fact that some of its stockholders are not engaged in business other than insurance may be construed as in violation of any charter provision, rule, or by-law of the respondent corporation, such provision, rule, or by-law is unreasonable, vexatious, oppressive, and *1041 foreign to the objects and purposes of the charter, contrary to law and public policy, and in restraint of trade, invalid and ultra vires.
Defendant answered, setting up that certain parties shown to be officers and stockholders of relator corporation are not enghged solely in the insurance business as a means of livelihood, and that the effect of their membership in the relator corporation is to give them a rebate, direct or indirect, on insurance premiums paid by them, or by firms with which they are connected, in violation of the spirit, if not the letter, of the law and of the principles underlying the foundation of the respondent corporation; that when relator, in the character of a local agent, filed an application for active membership in the respondent corporation, it was specifically informed, in order to qualify or to be eligible to such membership, it was necessary that all the officers 'and stockholders in a corporation and all the members of a firm so applying should be engaged solely in the active solicitation of insurance from the public as a means of livelihood, and should be persons who maintained regular offices and clerical forces for the proper conduct of the insurance business; that a specific ruling upon, and construction of, respondent’s charter and by-laws had been sought and obtained, to the effect that these instruments require applicants for membership to conform to the conditions thus stated; and that relator thereupon pretended to have made certain changes in its corporate organization in order to bring itself within said requirements, and accepted as binding the requirements as thus explained to it; that, notwithstanding it was admitted to membership upon the faith of its representations that it had complied therewith, it had not, in fact, so done, its compliance having been merely nominal; and it thereafter, without notice to respondent, placed of record the personnel of its real organization, whereby those requirements Were ignored and the provisions of respondent's charter and by-laws were disregarded, in consequence whereof, after hearing, it, having forfeited all rights as a member, was declared ineligible to and denied the privileges of membership. Respondent pleaded .estoppel, and prayed for the dismissal of the proceedings.
Relator, through Sprague Eustis, its secretary and treasurer, applied in writing for membership in the respondent corporation. In answer to the printed interrogatories accompanying its application, the said secretary and treasurer stated that his brother, H. Chotard Eustis, and his mother, Mrs. Louise Leeds Eustis, were its other officers, being respectively president and vice president. He further assured the membership committee of the respondent that he was the sole owner of the relator corporation, and that he- had no plan or intention of disposing of any of its stock to outside parties.
It appearing that H. Chotard Eustis, the president of relator corporation, was engaged in a business other than the active solicitation of insurance from the public, Sprague Eustis was informed that, according to the charter and by-laws of the respondent corporation, as construed by it, the outside business of one of its members disqualified it from membership therein. Whereupon, in order to meet said requirement, the said president severed his connection witff relator, and the wife of Sprague Eustis was substituted in his stead.
It further appears that Sprague Eustis was asked by the membership committee of respondent corporation whether George G. Westfeldt, or the firm of which he was a member .(the chairman of the committee was unable to remember whether the firm or individual was mentioned), had any connection with relator. To which interrogatory *1044 Sprague Eustis, insisting that he was asked concerning the firm’s and not the individual’s interest, replied that it (the firm) had no interest in relator corporation.
On July 13, 1919, the commercial firm of Westfeldt Bros., through George G. Westfeldt, applied for membership in the respondent corporation, which application on August 13, 1919, was refused, for the reason that said firm and its members were not solely engaged in the insurance business.
Thereafter, on May 11, 1920, the relator corporation made its application for membership) in the respondent corporation. On July 19, 1920, the application was accepted, and relator was elected to said membership.
On September 4, 1920, George G. Westfeldt was elected president, and Walter J. West, an employee of Westfeldt Bros., was elected vice president of the relator corporation. At that time the stockholders owning the entire capital stock of relator corporation were George G. Westfeldt, owning 38 shares, Sprague Eustis, owning 10 shares, Walter J. West and Harold W. Harper, also an employee of Westfeldt Bros., owning 1 share each. The mother and the wife of Sprague Eustis had ceased to have any interest whatever in the relator corporation.
The Motor & Eire Insurance Agency, Inc., was chartered on September 3, 1918, with a subscribed capital of $5,000 (50 shares of $100 each). The incorporators were Allen Mehle, owning 48 shares, and O. L. Chambers and J. E. Lansing, owning 1 share each.
On May 15, 1920, by notarial act executed in pursuance of a resolution of the stockholders, the name of the corporation was changed to the Eire & Marine Insurance Agency, Inc. The appearers in this notarial act were H. Chotard Eustis and Sprague Eustis. Prior thereto, the 4S shares of Allen Mehle had been transferred to Sprague Eustis, and the remaining two shares had been transferred, one to H. Chotard Eustis, and the other to Mrs. Louise Leeds Eustis, and later the share of H. Chotard Eustis was transferred to the wife of Sprague Eustis.
All organization expenses of the relator corporation, as well as the amount paid for the acquisition of the stock of the Motor & Eire Ins/ Agency, Inc., were paid by George G. Westfeldt.
After the relator corporation had been admitted to membership in the respondent corporation, Sprague Eustis transferred 38 of the 48 shares of stock to George G. Westfeldt, retaining 10 shares in his own name, and the 2 shares in the names of his mother and his wife were transferred to Walter J. West and Harold W. Harper. The 10 shares of stock were retained by Sprague Eustis, with the understanding that he was to give his note to Mr. Westfeldt for the purchase price thereof, to be paid out of the dividends earned by the company. It appears, however, that the company earned no dividends.
The conclusion is irresistible, from the evidence, a resume of which has hereinber fore been given, that, at the time the application for membership in the respondent corporation was made by the relator corporation, Sprague Eustis was not only not the sole owner of the business, but that his interest therein was merely nominal, and that the real owner of the corporation was George G. Westfeldt. Sprague Eustis, representing relator, frankly admitted on the stand that he knew when he was asked, at the time application for membership was made, whether Westfeldt Bros, owned any part of the business, and he answered in the negative; if he had disclosed to the membership committee of respondent corporation that George G. Westfeldt practically owned the business, his application would have been rejected, and no contract of membership would have been entered into with the relator. He testified that he had obtained legal advice, *1045 and that his intention was to conceal this fact until relator’s application had been accepted and it had obtained membership in respondent corporation, when the stock could be safely placed in the name of Mr. Westfeldt.
It is provided by article 3, section 3, of the by-laws of the respondent corporation as follows: 1
“Whenever an active member changes the firm name, or name of corporation, as the case may be, or there is a change in individuals composing the same, or whenever the business of an active member is disposed of as a going concern, or the business continued by the heirs of a deceased active member, a new application for membership shall be filed, and, pending regular routine prescribed, the executive committee shall grant temporary membership; but, when application is acted upon by the exchange, such action shall be final. * * * All assessments paid by the retiring firm, or corporation, shall be credited to the newly elected member. No person elected to membership shall exercise any of the privileges or functions pertaining to membership until he shall have qualified by complying with the conditions of the charter and by-laws of this exchange. Failure to qualify within 15 days after notice of election shall nullify said election.”
It is admitted that no new application for membership was made by relator after the change in its personnel by the transfer of stock to Messrs, Westfeldt, West, and Harper, and their election to the offices of president, vice president, and director respectively.
Respondent is a private corporation, and the right to share in its benefits and advantages is limited to the persons named in its act of incorporation and to those who may become members according to the provisions of its charter and by-laws. The choice of associates is a matter resting entirely with the members of the organization, to be determined according to its rules and regulations.
Relator, in applying, for membership, accepted, as existent, valid and correctly interpreted by respondent, its by-laws prescribing the qualifications for membership, and the grounds of disqualification for membership, and professed to conform thereto by changing its personnel.
The representations of relator made to respondent in order to obtain said membership were in the nature of warranties. The applicant warranted that none of its stockholders was engaged in any other than the business of fire insurance, and it also warranted that, if admitted to membership, its stock would not be transferred to any person not solely engaged in the fire insurance business. There was violation of both of said warranties. The actual owner of the relator corporation at the time of its admission to membership in respondent corporation was engaged in the coffee business, and his ownership, concealed at the time’ of the application, was recognized and placed of record within a few months after the application had been accepted and membership accorded.
Relator seeks to deny the existence of the by-laws invoked by respondent, or, in the alternative, if there be such, questions their validity. Having voluntarily accepted the charter and by-laws of respondent, relator cannot be heard to question either their existence or their validity. If relator became a member, it was bound by its acceptance of the charter and by-laws; if it difi not become a member, it remained a stranger, and has no interest to complain of respondent’s charter and by-laws.
Relator further avers that there ax'e many corporations, fixuns and members of the respondent corporation, the stockholders whereof, to the extent of huixdreds of individuals, are xxot exclusively engaged in the insurance business as a means of livelihood, and that no steps looking to their expulsion have been taken or are in contemplation.
Upon objection of irrelevancy, testimony upon this allegation was rejected. We think this ruling was correct, since the case *1048 presented is one dealing with a contract to which the' parties by their own acts have given a definite construction and meaning.
It may be observed, however, that article 2,' section 3, of respondent’s charter is followed by a note reading:
“Note. — Original subscribers- to the act of incorporation shall, ipso facto, become active members of the exchange, and the above-mentioned qualifications shall not be held to apply to said subscribers.”
It is not alleged that the parties referred to in relator’s petition were not among the original subscribers, but, even if there be some members who have been improvidently elected, relator’s cause is not strengthened thereby.
Relator is, in effect, seeking by mandamus to compel respondent to enter into a contract with it, or, in reality, with Messrs. Westfeldt, West, Harper, and Eustis, and respondent has been afforded no such opportunity as its charter and by-laws require to consider the eligibility of said parties to membership, since no corporation so constituted has ever applied for membership.
Relator’s demand is not only that respondent shall be ordered to make a contract to which it objects, but to'make it with persons with whom it is unacquainted, and who (save Mr. Eustis) appear to be persons whom its by-laws declare to be ineligible, and who offer conditions, that are unacceptable to it.
“A court of chancery will not undertake to force a member upon a corporation which is not engaged in commercial business but merely furnishes to its members facilities for carrying on business, against the will of those whose duty it is to pass upon application for membership.” American Live Stock Commission Co. v. Chicago Live Stock Exchange, 143 Ill. 210, 32 N. E. 274, 18 L. R. A. 190, 36 Am. St. Rep. 385.
In the circumstances of this case the court is unable to grant relator’s demand.
Judgment affirmed.
Rehearing denied by the WHOLE COURT.